# Board of Trustees of Madison Academy v. Board of Education of City of Richmond.

April 26, 1940.

W. J. Baxter, Judge.

George C. Robbins, for appellant.

John Noland for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a declaratory judgment proceeding brought by appellee, as plaintiff below, against the appellant, as defendant below, under the provisions of Sections 639a—1 to and including 639a—12 of our Civil Code of Practice. Its purpose was and is to construe a deed executed by one Robert Caldwell on June 15, 1816, by which he conveyed a vacant lot containing 1½ acres to the appellant, which was created by a special act of the General Assembly of Kentucky, approved on February 1, 1814, with provided trustees for carrying out the project contemplated by the act creating the academy, by which term we will hereafter refer in designating the appellant. The deed contains a stipulation in these words: "It is expressly understood by and between the parties hereto, that the said Caldwell does vest the title of the land aforesaid in the said Trustees for the sole purpose of erecting buildings thereon for the use of the Madison Academy, and for no other purpose whatever."

It was also provided therein that "if the said trustees or their successors in office shall fail to improve said lot by erecting thereon, a building for the purpose of teaching students for the term of three years from the date first above written (the date of the deed), then and in that case the land hereby sold and conveyed  *  *  * shall revert and be again vested in the said Robert Caldwell, his heirs and assigns, as fully as he the said Robert Caldwell held the same before the execution of this Indenture." That condition was complied with and the reverter therein provided for became obliterated. Another provision in the deed said: "And it is also understood by the parties aforesaid and expressly reserved by the said Caldwell that when the Citizens of Richmond and its vicinity shall choose to erect a meeting house or church for the purpose of religious worship they shall have a right at any time and forever to erect and keep in repair the same on the land hereby sold and conveyed, on some suitable part thereof." The deed further prescribed that: "And it is also understood by the parties aforesaid and expressly reserved by the said Caldwell, that if the members of the Masonic body Richmond Lodge number twenty five, shall at any time choose to erect a building on said lot or parcel of ground for the accommodation of said Lodge, they shall have the privilege of doing so on some suitable part of said ground, and enjoy all the privileges necessarily incident to the establishing of said Lodge on said ground."

There were, therefore, three sets of beneficiaries provided for in the deed. They were, studnts desiring to be educated in or at the contemplated Academy; the citizens of Richmond, and its vicinity, if they saw proper to erect a church building on a portion of the lot, and Masonic Lodge No. 25 of Richmond, if it saw proper to erect a building on a portion of the lot for its use. Neither of the last two beneficiaries ever sought to appropriate the benefits conferred by them under the deed. They, therefore, may be considered to have abandoned the benefits of the trust conferred upon them.

Within the three years stipulated in the deed the trustees of the Academy erected an appropriate building and conducted a school therein for the education of students desiring to attend, and which was operated until about 1894 when, because of a total lack of funds arising from student tuition or other sources, plus the extremely

dilapidated condition of the property, the school could no longer be conducted without the expenditure of a considerable amount of money, which was utterly unavailable to the trustees. Consequently they, in the year mentioned, entered into a contract with the then Board of Education of the City of Richmond (which has continued as an educational institution since then) by which it leased the lot conveyed by the Caldwell deed to the board (by which word the appellee will hereafter be referred to) for a period of ninety-nine years from that date—with the agreement that the board would erect on the lot a school building for the education of students of the community and that it and its successors would operate it as such throughout the period of the lease. A building was erected on the lot following that lease and a school conducted therein in accordance with the terms of the lease until the year 1919, when the building was burned, thus producing the necessity of erecting a new one. However, before the burned building was erected by the board on the lot conveyed by Caldwell, a suit was instituted for the purpose of determining whether or not the board of trustees of the Academy had the right to make the lease on the terms indicated, and it was adjudged by the trial court that they possessed that right, and that in doing so they in no wise violated the terms of the trust. That judgment was affirmed by this court in the case of Trustees of Madison Academy v. Board of Education of Richmond, 26 S. W. 187, 16 Ky. Law Rep. 51.

The time elapsing from the construction of the school building by the board in 1894 until it burned in 1919 (25 years) brought about many changes in conditions in the city of Richmond, prominent among which were that the 1½ acres became too small an area for the operation of the requisite high school which conditions then demanded in the city of Richmond. Another one was that the population had shifted so as to make the Caldwell conveyed lot more or less isolated, and when a new school building was erected by the board after the 1919 fire it was on a lot containing more than seven acres which the board had acquired for that purpose, although its lease on the Caldwell lot was then only about one fourth expired, but which at this time has 54 years to run. In the circumstances the trustees of the Academy entered into an agreement with the

Military Department of the Commonwealth of Kentucky, and with the board, by which they (trustees) and the board would join in a deed to Madison county conveying the Caldwell lot to the latter, upon which the Military Department agreed to erect a commodious armory with facilities for educating students who desired to obtain military training, and to be known as the "Caldwell Armory." In the tentative agreement (all of which was embodied in a writing proposed to be executed by all parties) the board agreed to take the $1,200 consideration for the lot (which it is agreed is all that it is worth) and devote it to the construction of a building on its seven acres in which it agreed to conduct a manual training school for the benefit of students desiring education in that line. This declaratory judgment action seeks to obtain the judgment of the court determining whether or not the proposed scheme as embodied in the tentative agreement may be carried out without violating the terms of the trust. The trial court adjudged that the proposed scheme, as embodied in the pleaded agreements, did not violate the terms of the trust under which the lot was held by the Academy and approved it, to reverse which this appeal is prosecuted by the Academy through and by its trustees.

The trust created by the deed executed by Caldwell was clearly a "charitable" one. Section 324 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, being a part of the chapter on Charitable Uses and Religious Societies, says: "It shall be competent for the circuit court of the county in which the real estate held in the manner mentioned in this chapter is situate, to adjudge a sale of the same for the purpose of reinvestment in similar property in the same county, and for the same uses, trust and purposes; but such judgment shall only be rendered upon petition in equity made by the proper parties, setting forth the reasons why such sale would be proper and equitable, which may be controverted; and when it shall also appear that such sale will not violate any reserved rights or qualifications or limitations expressed in the dedication or grant."

In the case of Sawyer v. Lamar, 230 Ky. 168, 18 S. W. (2d) 971, there was presented these facts: Item 7 of a will devised to the Methodist Church at Hawesville, Kentucky, "my new home and the lot on which it stands and the lot adjoining to be used as a parsonage for the

said church, this being my Hawesville home and lot.'' At the time of the devise, which became effectual on the probate of the will, the church possessed a parsonage on a different lot, but it was very much out of repair and the congregation had no means with which to repair it. It filed the action under the provisions of Section 324, supra, of our statutes for the purpose of having it determined whether or not the trustees of the church could sell the devised lot and with the proceeds repair its parsonage located on a different lot. The trial court held that the sale could be made without violating the trust, and which judgment we affirmed. In doing so we said: ''The reinvestment was in the same county, and the proceeds were used for parsonage purposes. Does it make any difference that, instead of buying a new parsonage, the proceeds were used in improving and repairing a parsonage already owned as above indicated? We think not.'' Compare also the cases of Hill v. McGarvey, 19 S. W. 586, 14 Ky. Law Rep. 101; Hegan v. Netherland, 141 Ky. 686, 133 S. W. 546, and People's Savings Bank & Trust Company v. Board of Trustees of South Side Baptist Church of Covington, Kentucky, 220 Ky. 113, 294 S. W. 804.

But, independently of the statute, and our cited opinions construing and applying it, the declared law as contained in authorized texts would appear to permit the carrying out of the character of transaction here involved. In substantiation thereof we insert this excerpt from 5 R. C. L. 363, Section 102: ''It has been said that a condition that the trustees of a charitable trust shall not sell or alienate the property devised to them will not prevent a court of chancery from permitting, in case of necessity arising from unforeseen change of circumstances, the sale of the land and the application of the proceeds to the purposes of the trust. Thus where the circumstances existing at the time of the creation of a charitable trust have changed to such an extent that, in order to carry out properly the charitable intention of the donor, it is necessary to dispose of the trust property and devote the funds to the acquisition of a more suitable location, a court of equity will authorize the sale of the property.''

To the same effect is the text in 11 C. J. 354, Section 71, wherein it is also said that: ''In some states the power, with certain limitations, is expressly conferred

on the court by legislative act. The court is not deprived of its inherent jurisdiction to order a sale of the property of a charitable trust by a statute authorizing the trustees to lease or to sell the land, or authorizing the creation of a charitable trust by which the subject matter shall be inalienable. The power, whether inherent in the court or conferred by statute, is properly exercised where changed conditions and circumstances make the alienation of a part or all of the property essential to the beneficial administration of the charity," etc.

In support of the latter statement contained in that excerpt, cases from many states of the Union are cited, and from all of which there can be no doubt but that property composing a part or all of a charitable trust may, under certain proven facts and conditions, be sold for re-investment, provided the purpose of the trust is not abandoned by the re-investment, but continued to be provided for in a manner so as to carry out the general intention and purpose of the donor of the charity. It is true that in this case the proceeds of the lot constituting the trust are not to be re-invested in another lot but in a building improving other real estate, and which is necessary to carry out the intention and purpose of the donor, and which was the exact situation in the Sawyer case supra, in which we held that the sale of the trust property might be made for the purpose indicated, although the proceeds of the sale were not to be invested in similar property to that which was sold, but only in improving other similar property to be used for the same purpose.

The Academy in this case has no funds, and we held in the case of Trustees of Madison Academy v. Board of Education of Richmond, supra, that the duty of administering the school to be conducted on the lot could be delegated by its trustees to the Board of Education of Richmond. The latter still proposes to carry out that purpose, but in a building to be erected on its own lot located in the same city, with the proceeds from the sale of the lot conveyed by the donor of the trust, and which is the only way proposed to prevent the trust from entirely failing. Therefore, to keep it alive so as to continue to serve or carry out the purpose of the donor, the contemplated agreements were entered into. We are confident that the scheme does not violate any provi-

sions of the trust deed executed by Caldwell, and that the judgment was correct and should be affirmed, but for one fact now to be briefly considered.

We have held supra that what has been done by the trustees of the Academy and what they propose to do does not and will not constitute a violation of the trust so as to create a reverter of the title to the heirs of Caldwell, which might happen if the trust became wholly abandoned. But there is a group of persons who would take the property if a reverter should have been declared and who are the heirs of Caldwell, none of whom, nor any representatives of them with the right to defend for the benefit of all, were made parties to the action.

Section 639a—9 of our Civil Code of Practice—which is a part of our Declaratory Judgment Act—specifically prescribes that: "When declaratory relief is sought; all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." In the cases of Axton v. Goodman, 205 Ky. 382, 265 S. W. 806; Ezzell v. Exall, 207 Ky. 615, 269 S. W. 752; Coke v. Shanks, 209 Ky. 723, 273 S. W: 552; Lyons' Adm'r v. Greenblatt, 213 Ky. 567, 581 S. W. 487, and Ex parte Hirsch's Committee, 245 Ky. 132, 53 S. W. (2d) 211, we held that this court should not enter a declaratory judgment where some of the parties who might be affected by the judgment were not before the court, and who would not be bound by any judgment that might be rendered. The judgments in those cases were under our Declaratory Judgments Act, and such declarations were made pursuant to the excerpt taken from the last cited section supra.

But aside from the provisions of the Declaratory Judgment Act, Section 28 of our Civil Code of Practice requires that all parties having any interest, contingent or otherwise, to property or in the subject matter of a litigation should be made parties to any action involving its title. Hence, in numerous cases heretofore decided by this court involving questions of taxation for the purpose of raising funds to discharge bonded indebtedness (see cases in notes to the section), we have held that the bond holders should be made parties to the litigation, either by representation or individually, and in

·our disposition of appeals in such cases we have directed the trial court to supply such deficiency by requiring the bond holders to be brought before the court.

The principle was also recognized in a number of cases cited under West Key Number System, 29, Volume 15 of West's Kentucky Digest, page 67, under the subject of "Parties"—the latest case being Cumberland Pipe Line Company v. Raider, 237 Ky. 344, 35 S. W. (2d) 532. We surmise that there will be no difficulty in locating at least some of the heirs of the donor of the trust within the commonwealth who could be made parties to the litigation to defend for themselves and ·other heirs of his, though remote, by a proper order of court, and which we conclude should be done before a final judgment in the cause should be entered. When done, if there is no reason manifested why the judgment herein approved should not be entered, then the court will re-enter it—otherwise the judgment to be rendered should be such as the additional facts, if any, authorize.

Wherefore, the judgment is reversed, for the rea-:sons stated, and for proceedings consistent with this ·opinion.

The whole Court sitting, except Justice Rees, who was absent.