## Harwood et al. v. Dick.

March 28, 1941.

424

B. M. Harwood for appellants.

Guthrie F. Crowe and J. Ballard Clark for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellants brought this action in the Oldham circuit court seeking to have an alleged trust declared abandoned and terminated, and further, that they be adjudged the owners of the residue of the trust fund by virtue of the will of their ancestor. The facts are these:

William M. Funk died testate in September, 1841. The parts of his will involved in this litigation read:

"10. I wish the sum of ten thousand dollars appropriated to the establishment of an institution of learning at LaGrange, to be called the Funk Seminary, provided the citizens of Oldham County subscribe and pay the sum of five hundred dollars in aid of said institution.  *  *  *

"14. I wish the sum of ten thousand dollars

named in the 10th item to be raised by the sale of real estate at two, three and four years' credit. If the people of Oldham County should not raise the sum of five hundred dollars within one year, the donation to the seminary at LaGrange should be forfeited and pass to my residuary devisees."

The citizens of Oldham county subscribed and paid the sum of $500 in the aid of the institution as provided in the will.

Pursuant to an Act of the Legislature of Kentucky, approved February, 1842, certain trustees were appointed to take charge of the trust and erect a seminary building, which was done, and through and by the trustees and their successors the institution of learning, known as the "Funk Seminary," was maintained at LaGrange without any question or interruption until about the year 1911 at which time the old school building in which the school was conducted was destroyed by fire. However, at that time a suit which had been instituted in October, 1910, was pending in the Oldham circuit court styled J. L. Reeves, Superintendent of Schools of Oldham County, et al. v. Joseph Sauer, Trustee of Funk Seminary, et al., wherein it was alleged that it was impossible to continue the use of the old Funk Seminary building for school purposes, since it was inadequate and unsafe, and asking for a sale of the property and that the proceeds be supplemented by funds of the Oldham County Board of Education and the LaGrange Graded School District funds in erecting a new public school building in LaGrange. In sustaining the petition and granting the relief sought the judgment reads in part:

"This cause being submitted on the pleadings, papers, exhibits and the proof filed and the Court being advised, it is adjudged by the Court the plaintiffs are entitled substantially to the relief sought. It has been made to appear to the satisfaction of this Court that it is impracticable for the Trustees of Funk Seminary to have and maintain an institution of learning at LaGrange, Kentucky with the funds belonging to said Institution within the meaning and intention of the will of the donor, William Funk and that the fund and property belonging to said Seminary is not sufficient to support and so maintain the same independently and alone as a

school and that the building is insufficient, unsuitable and it may be unsafe and it being made further to appear to this Court, that there has been established a Graded Common School District including the Town of LaGrange whose trustees are plaintiffs herein and that the county Board of Education for Oldham County also plaintiffs herein have agreed to establish and maintain at LaGrange a County High School of the first class and there being no other organized Educational Institution at LaGrange and it being the opinion of this Court that said Funk Fund should now be used to aid the said combined schools at LaGrange, and so carrying out the intention of the donor as near as may be. The Court now orders that the four lots and the building thereon described in the petition and which are situated in LaGrange, Oldham County, Kentucky be sold. * * *''

After describing the property to be sold and the manner of sale by the court commissioner, the judgment further provided in reference to the proceeds of the sale of Funk Seminary that ''The income, however, from said fund is to be applied and used in aid of an institution of learning located in LaGrange, Kentucky and to be known as 'Funk Seminary.' '' No appeal was taken from that judgment.

Pursuant to that judgment the property was sold for the sum of $5,220 and that sum, together with funds furnished by the County Board of Education and the LaGrange Common School District, was applied to the erection of the new school building which bears an inscription on the front of the building, ''Funk Seminary,'' and the diplomas issued to the graduate students bear the name ''Funk Seminary,'' and Oldham County High School, and likewise, letterheads, stationery, and all papers used in connection with the school bear the name ''Funk Seminary'' and, the institution is generally known in the community as the ''Funk Seminary.''

At the time of the institution of that suit and the judgment thereon, Robert T. Crowe was trustee of the Funk Seminary and acted in that capacity until his death in 1938, and was then succeeded by the present trustee, Gilbert T. Dick, the defendant in the present action.

The school was conducted and operated in the name and manner set out above without interruption or question until appellants instituted this present action in 1938, naming as party defendant, Gilbert T. Dick, Trustee of Funk Trust Fund, alleging in their petition, in substance, that they are the heirs at law of the residuary devisees of William M. Funk, testator, and further, that since the old school building was destroyed by fire in 1911 there had been no institution of learning at LaGrange known as the Funk Seminary and none had been operated or maintained for the purposes for which the bequest was made by the testator. They further set out a history of the operation of the school and other facts including the judgment of the Oldham circuit court rendered in 1910, mentioned above, and further, that because of these events and the manner and way in which the property and funds of the Funk Seminary had been sold, intermingled and consolidated with the public school fund of Oldham County and the graded school district of LaGrange contrary to the provisions of the will and the intention of the testator, the trust had completely failed and, therefore, appellants as heirs of the residuary legatees of the testator were the owners of all the assets and funds of the old Funk Seminary now aggregating the sum of about $9,100 and prayed that same be distributed among them according to their respective shares.

By subsequent pleadings issue joined and certain evidence was taken relating mostly to the history and conduct of the old Funk Seminary and the present institution since 1910, and upon trial of the case the chancellor dismissed appellants' petition. From that judgment this appeal is prosecuted. The evidence presents no question of fact material to the determination of the case. The only question involved is one of law to be determined from the will and the facts indicated above.

Appellants insist that by the terms of the will of the testator the trust fund could not be used for the benefit of the LaGrange High School and the chancellor could not by application of the judicial cy pres doctrine remodel the fund, nor turn it over to a trustee for the use of the public schools of Oldham county, and hence the trustee appointed by the court is incapable of taking the fund for the use and benefit of the Board of Education of Oldham County.

It is admitted by appellee that if the trust failed the appellants would be entitled to the fund. In that we think they are correct. To support appellants' contention that the trust had failed, the case of Taylor, etc., v. Rogers, etc., 130 Ky. 112, 112 S. W. 1105, is cited. While there is much in common between that case and the present case, yet they are distinguishable. It is pointed out in the opinion in that case, supra, that the school contemplated by the donors of the trust fund was of a character entirely different from the school provided by our public school laws, and among the differences noted are, the mode of government of the school; in the curriculum of the course of study, it being provided that it should be extensive enough to permit graduates to enter the sophomore class of the college of that vicinity; in the method of selecting teachers; in the endowment provided for, in that ten per cent of the tuition fees and endowment fund should be used to maintain the building and equipment, and other similar requirements.

In the case at bar the will creating the trust contains no such provisions as those enumerated in the case supra. It merely provides that the gift of $10,000 is for the establishment of an institution of learning at LaGrange to be called "Funk Seminary," without any restrictions as to the class or kind of institution of learning in respect of curriculum, method of selecting teachers, or other matters like or similar to that contained in the Taylor case, supra. Appellants also cite the case of Bush's Executor v. Mackoy et al., 267 Ky. 614, 103 S. W. (2d) 95. However, we do not find much in common between that case and the present one, except, however, the statement in that opinion to the effect that in endeavoring to ascertain the intention of the testator, the question is, what is meant by what the testator said, rather than what he intended to say. That rule is fundamental and applicable to the construction of all wills, and it is likewise the settled rule that in the absence of ambiguity a will will be construed by the language employed by the testator according to the usually accepted meaning and interpretation indicated by the language. We find no ambiguity in the will in question creating the trust. It goes no further than to state in plain and unmistakable language that the $10,000 is to be applied to an institution of learning at LaGrange and

to be called the Funk Seminary. The words "institution of learning" evidently mean a school for the education of children. It would appear, therefore, under the broad and unlimited language employed by the testator, that so long as the fund donated is applied to and used for the maintenance and operation of an institution of learning at LaGrange and bearing the name of Funk Seminary, there is no departure from the intention of the testator nor any failure of the object of the trust.

In Carlisle County et al. v. Norris, 200 Ky. 338, 254 S. W. 1044, 38 A. L. R. 41, it is pointed out that where there is no reservation of a power of revocation or provision for reverter, the trust may be extinguished so as to revert to the donor or his heirs *when and only when, there has been an entire failure of object or purpose,* there being no reverter when the gift can be applied to a similar charity, under the doctrine of cy pres. Also, in Hegan v. Netherland et al., 141 Ky. 686, 133 S. W. 546, it is said that a court of equity has the inherent power to direct a sale of trust property in cases where the trust fund can, by reason of such sale, be more beneficially administered in accordance with the intention of the testator. To the same effect, see Thompson's Ex'r v. Brown, 70 S. W. 674, 24 Ky. Law Rep. 1066, 62 L. R. A. 398. In reference to the cy pres doctrine, the equitable principles of which have been recognized and applied in this state in a limited degree, in the case of Moore's Heirs v. Moore's Devisees & Executors, 34 Ky. 354, 4 Dana 354, 29 Am. Dec. 417, the Court pointed out that the cy pres doctrine is not judicial, except where there is an available charity to an identified object, and a particular mode is prescribed which is not available. Then a court of equity may substitute or sanction some other mode to effectuate the declared intention of the donor, but cannot declare an object for him. A court may act judicially in such cases as long as it effectuates the intentions of the donor. To like effect are the cases of Curling's Adm'rs v. Curling's Heirs, 8 Dana 38, 33 Am. Dec. 475; Kinney v. Kinney's Executor, etc., 86 Ky. 610, 6 S. W. 593.

In 10 Am. Jur. 677, Section 125 et seq., the rule is thus stated:

"Courts here, as anciently, look with favor upon all donations to charitable uses and give effect to them where it is possible to do so consistently with rules

of law, and to that end the most liberal rules the nature of the case will admit of, within the limits of ordinary chancery jurisdiction will be resorted to if necessary.''

Also, in 11 C. J., p. 353, Section 70, it is said:
''Also, where the trust is for educational purposes, the trustee may, in administering the trust, work in conjunction with the public school authorities, provided that in so doing, they do not go beyond the terms and purposes of the trust.''

Mars v. Gibert, 93 S. C. 455, 77 S. E. 131, is pertinently in line with the case at bar. The court said:

''Considerable flexibility is allowed in the details of the execution of a charitable trust so as to adopt it to the changed conditions, and a bequest for the maintenance of an agricultural and mechanical school on the testator's land, primarily for the benefit of 24 poor boys and girls, and generally for the boys and girls of the entire community, may be administered by its trustees in connection with the public schools of the same neighborhood, so long as the purpose of the testator is not thereby defeated.''

In the domestic case of Sawyer v. Lamar et al., 230 Ky. 168, 18 S. W. (2d) 971, the item of the will involved reads:

'' '* * * my new home and the lot on which it stands and the lot adjoining to be used as a parsonage for the said church, this being my Hawesville home and lot.' ''

The church owned a parsonage on a different lot which was out of repair and the church had no money to repair it, and this court held that the devised property left for a parsonage could be sold and the proceeds applied to the repair of the church parsonage, which was on another lot. See, also, Gill's Ex'r v. Woman's Club, 205 Ky. 731, 266 S. W. 378.

It is admitted that at the time the Funk Seminary property was sold pursuant to the 1910 action, the school building was about seventy-five years old, out of repair and inadequate for school purposes even at that time, and owing to the increase in population in the town of LaGrange and the increase in the number of school

children, a larger and more efficient building and equipment was greatly needed. It is also apparent from the record that the Funk fund in the hands of the trustee was insufficient to meet the requirements indicated above, and for that reason the property was sold and the proceeds thereof, together with other funds in the hands of the trustee, was supplemented by the public school funds of the county and the local graded school district, and applied to the perpetuation and maintenance of an institution of learning at LaGrange which still bears the name of the testator. Also, the Funk fund, or Funk Seminary, has always been and still is represented by a trustee. True it is, the trustee may act in conjunction with the public school authorities as auxiliaries to the Funk institution, yet he is primarily, trustee and representative of the Funk fund and Funk Seminary, all of which tend to perpetuate and carry out the primary purposes and objectives of the testator.

Under the foregoing facts it appears to us that the things complained of by appellants and asserted by them to have terminated and destroyed the trust, rather tends to perpetuate it and perhaps save it from failure, which apparently would have inevitably resulted but for the arrangements made for it to function in conjunction with the public school authorities.

While the old English cy pres doctrine has not been recognized and applied to its full extent according to the ancient rules, yet the equitable principles of it has been applied in a limited degree, as will be seen from the authorities, supra, in practically all of the states of the Union including Kentucky, and if it be conceded that the action taken in consolidating the Funk Seminary with the public schools, if it should be considered a consolidation, was a partial application of the cy pres doctrine, yet the purposes to be accomplished were in harmony with the intention of the testator and are pertinent to the objectives expressed in the will. There is nothing in the will to indicate that the testator intended the trust, or "institution of learning" to be a strictly exclusive institution to such extent as not to welcome financial aid from other sources to save it from failure, or to enable it to keep abreast of the times in order that it may function more efficiently.

It is next insisted that the judgment of the Oldham

circuit court, pursuant to the action instituted in 1910 for the purpose of selling the Funk Seminary property, was illegal and should not have been entered, because no heir of the residuary legatee was made a party to that proceeding. In the case of Board of Trustees of Madison Academy v. Board of Education of City of Richmond, 282 Ky. 671, 139 S. W. (2d) 766, an action was brought under the provisions of the Declaratory Judgment Act, Civil Code of Practice, Section 639a—1 et seq., requesting the court to construe a deed and to adjudge whether or not a contract for the sale of the property was valid. It was held that the heirs of the donor should have been made parties to the action, since Section 28 of our Civil Code of Practice requires that all parties having any interest, contingent or otherwise, to property or in the subject matter of a litigation should be made parties to any action *involving its title*. The action of 1910 involved in the case at bar did not involve the construction of the will or otherwise involve the title to the property in the usual sense of the word. It was merely an application to a court of equity for the sale of trust property in the hands of and controlled by a trustee for the purpose of reinvestment or a continuation of the trust still in existence and functioning and merely to augment it and save it from possible failure. It appears that the action was brought pursuant to Section 324, Kentucky Statutes, authorizing such proceedings and that statute only requires the application for reinvestment to be made to the court by the proper parties. Proper parties must be determined from the facts and circumstances of each case.

Conceding, without deciding, that the heirs of the residuary legatees should have been made parties to the previous action in question, yet, since there is no insistence that the failure to do so rendered the judgment void, but merely erroneous, and the judgment not having been appealed from, vacated or modified, it results that it is still in force and effect. However, if the judgment had been void so far as it may tend to affect the interests of appellants, yet they have not been divested of any rights by the sale of the property, since the proceeds of the sale have been preserved, and appellants are now having their day in court and asserting their rights to the proceeds. No reversion had occurred at that time nor since, and the action dealt purely with the

434

management of the trust, rather than to deprive the appellants, as contingent devisees, of any rights whatever, either vested or contingent. If appellants had been made parties to the challenged previous action they could not have asserted any more rights than they are now asserting in the present action, namely, that the trust had been terminated, and a demand for the proceeds of the sale of the property, all of which we have considered and disposed of upon the merits.

From what has been said, it follows that the judgment must be, and is, affirmed.