**ORPHAN SOCIETY OF LEXINGTON and Good Samaritan Hospital of Lexington, Kentucky, Appellants,**

**v.**

**BOARD OF EDUCATION OF LEXINGTON, Kentucky (Now Board of Education of Fayette County, Kentucky), Appellee.**

Court of Appeals of Kentucky.

Feb. 7, 1969.

Foster Ockerman, C. Michael Miller, Martin, Ockerman & Brabant, Lexington, for appellants.

William E. Sloan, Wylie & Sloan, Lexington, for appellee.

Wallace, Turner & Trigg, Lexington, amici curiae.

DAN M. GRIFFITH, Special Commissioner.

The ultimate issue presented by this case is whether the Lincoln School in the west end of Lexington has "ceased to exist" within the meaning of that term as used in a deed of trust executed on the 13th day of March, 1911, and providing that the trust thereby created would terminate when the school "ceased to exist." The trial court held that the school had not "ceased to exist" within the meaning of those words used in the trust instrument and held for the Plaintiff-Appellees, Board of Education of Lexington, Kentucky.

The distinguished trial judge filed a comprehensive written opinion setting forth the salient facts and dealing comprehensively with the legal issue presented. This court believes the opinion is correct and hereby adopts it. The opinion is quoted:

"This action is before the Court for a declaratory judgment concerning a certain trust created by a trust deed of Anthony Dey dated March 13, 1911.

"The salient facts are that in January of 1910, the Civic League, a local organization formed for the purpose of securing a

school for the needs of the Irishtown community, entered into a contract with the City Board of Education. The League had undertaken to raise $10,000.00 by private subscription to be used for the erection and equipment of a model school in the west end of Lexington. In consideration of this sum, the Board of Education agreed that the school, when erected, would be conducted, in addition to the regular and usual common grade courses, with instruction in cooking, carpentry, laundry work and other approved forms of handwork and in gymnastics, suitable for recreation and physical culture, 'to the end that there may be hand and physical training in every grade of said school.'

"The Board further agreed with the League that the premises might be used, under reasonable regulations and restrictions, for a playground and vacation school and for the promotion of such wholesome social activities as it might be possible for the Board of Education and the Civic League, or either of them, or other proper parties, to establish and maintain; provided that same should be conducted at such times and in such manner as not to interfere with the use of said school and premises for regular public school purposes.

"This agreement was to run for a ten-year period, and it further specifically provided that the model school intended to be established and maintained should only be required to be conducted according to the plans and methods outlined for a period of ten years from and after the date on which the said school should be regularly opened for the admission and instruction and training of pupils therein, and after the expiration of said period of ten years, the Board of Education could alter the character and conduct of the school and devote the school property to any other appropriate public school purposes which it might deem necessary, appropriate or advisable.

"On March 13, 1911, over one year after this contract was executed, Anthony Dey made charitable trust gifts by means of inter vivos deeds of trust to three Lexington objects of benefit. One gift was to the Orphan Society of Lexington, one gift was to the Good Samaritan Hospital, and one gift to the Civic League for the benefit of the West End Model School to be erected. The Security Trust Company, which was the predecessor of the present First Security National Bank and Trust Company, was the appointed trustee in all three instruments.

"We are especially concerned with the gift to the Civic League. The trust instrument, in the form of a deed of trust, gave to the trustee $10,000.00, the income from which was to be paid semi-annually to the Civic League to be used by it 'for kindergarten work, for industrial and manual training, for social and educational work, including the use of the stereopticons and lectures, in connection with the West End Model School hereafter to be erected by the Board of Education of the City of Lexington, Kentucky, and said building, when constructed, to be used in accordance with a contract entered into between said Board and said Civic League, dated January 18, 1910.'

"Another provision of this deed of trust provided as follows: 'The object of the party of the first part in donating the fund, herein described, and for the purpose herein named, is that its use may stimulate educational work in Kentucky, and that said Model School and the work done in connection therewith may serve as examples for work of like character in other localities in Kentucky.'

"The trust deed also provided as follows concerning termination of the trust: 'In the event said West End Model School should not be erected, or should at any time cease to exist, or if from any cause the income on said fund cannot be or is not applied by said Civic League to the purposes herein designated, then the said fund shall pass to the Security Trust Company of Lexington for the benefit of the

Managers and Directors of the Orphans Society of Lexington and the Good Samaritan Hospital of the City of Lexington.'

"The West End Model School was subsequently erected and named Lincoln School. The Board of Education operated Lincoln School in accordance with the terms of the above-mentioned contract for longer than the required ten-year period. The school had a swimming pool and a laundry, which were used by residents of the neighborhood, and a sundeck used in the treatment of tubercular children. Considerably after the ten-year period, the Board discontinued several of the above-mentioned activities but continued to provide special remedial work. The Civic League used the income from the trust for the benefit of the Lincoln School children. The funds were spent for such things as clothing, transportation, equipment for the school and for parties at Christmas and other times of the year. A large part of the funds were used to provide lunches for the children who attended the school and for other children of the Irishtown community who were then attending Junior High School.

"On June 9, 1966, the Board of Education voted to close Lincoln School and designated that all sociological efforts unique to Lincoln School should be transferred to the renamed "Jefferson Davis Model School" for the benefit of former Lincoln children. The principal of Lincoln School and an extra counselor who had been at Lincoln School were sent to Jefferson Davis Model School. The Civic League proposes to continue using the funds for the benefit of the children of the Irishtown community now attending Jefferson Davis Model School.

"The defendants, Orphans Society of Lexington and Good Samaritan Hospital of Lexington, contend that the trust for the benefit of the West End Model School has failed and that as alternative beneficiaries under the trust deed they are entitled to be substituted as beneficiaries of the trust according to the trust instrument. The trustee, by brief, contends that the trust established by the above-mentioned deed has terminated as to the defendant, Civic League, and the application of the income of the trust for the purpose of Lincoln School, and that such income should now be paid over to the Good Samaritan Hospital and the Orphans Society of Lexington.

"The issue in the case appears to be that the Court must determine whether the closing of Lincoln School on June 9, 1966, and the transfer of the students therein to the Jefferson Davis Model School terminated the trust so as to cause the alternative beneficiaries to be entitled to the income from it.

"In order to make this finding, the Court would be compelled to hold that this act of the Board of Education of Lexington caused the school to cease to exist or created a condition by reason of which the income on the fund cannot be applied for the primary purposes of Mr. Dey's gift.

"The parties have filed excellent and exhaustive briefs in the case which have been of material benefit to the court, and the Court has engaged in some research of its own.

"At the outset, it would appear that the alternative beneficiaries contest that the contract between the Board and the Civic League referred to in the deed of trust is the contract which is contained in the record. They point to a relatively insignificant difference in dates. Nevertheless, it cannot be disputed that Mr. Dey was fully aware of a contractual undertaking between the League and the Board of Education, and was further aware that the building, when constructed, was to be used in accordance with a contractual undertaking and that the Board of Education was in the business of providing public education to the community.

"The alternative beneficiaries, in their latest brief, rely upon the case of Tay-

lor v. Rogers [130 Ky. 112], 112 S.W. 1105, as conclusive of the controversy. The Court does not so construe the holding of that case. In that case, persons donated money and property to establish a training school of a designated character different from a public school. A deed conveying real estate provided that on failure to maintain a school thereon of the described character, the land should be conveyed to trustees to be used for the purposes for which it was deeded. The school was a failure and could not be conducted. The Court properly held that the trust had failed and that there was a reversion. In the instant case, the undisputed fact is that the school, instead of failing, succeeded and has provided throughout the years commendable education to the children of the Irishtown community. If we were to pursue this argument of the alternative beneficiaries to its logical conclusion, it would be just as reasonable to say that because stereopticons were not used in connection with social and educational work, the trust had failed.

"As a practical matter, of course, we must, as always, determine the paramount intent of the settlor of the trust. His paramount intent was to aid in the education of the children of the Irishtown community, according to the best accepted methods of education for their particular needs at the time of the creation of the trust in a public school environment. By this way, according to his language, he hoped to stimulate educational work in Kentucky and that the school and the work done in connection with it would serve as examples for work of like character in other localities in Kentucky.

"The rule appears to be where a will, or, in this instance, a deed of trust, manifests not a general charitable purpose, but a specific restricted purpose which itself, rather than its prescribed method of execution, is impossible of performance, then the trust should be terminated and the gift over to an alternative charitable beneficiary should be enforced. See Defenders of Furbearers v. First National Bank & Trust Co. of Lexington, Ky., 306 S.W.2d 100.

"Implicit in this statement of the rule is the proposition that even though the prescribed method of execution is not possible, yet if the restricted purpose may be accomplished by other means and modes of execution, then the trust may continue.

"In Hampton v. O'Rear, 309 Ky. 1 [215 S.W.2d 539], the Court held that where a testator devised trust corpus to a named hospital for the construction of a wing of limited cost, partly for colored patients and partly for general hospital uses, income to be used by the named hospital and no other, on condition that the testator's directions be carried out, and the testator empowered a representative to procure acceptance and establishment of the trust, a disclaimer by the named hospital caused the trust to fail and the Court would not sustain it under the cy pres doctrine by permitting another hospital for Negroes to be built in the area of the named hospital. This, of course, was a case of the failure of a condition precedent to the commencement of the trust, and, in addition thereto, the testator enjoined 'strict adherence to and compliance with these provisions' in his will. He further added a qualifying clause, 'and not otherwise.' The difference between that case and this is immediately apparent when the language of the settlor of the trust here and the circumstances surrounding the creation of the trust are considered.

"In the case of Pennebaker v. Pennebaker Home for Girls, 297 Ky. 670 [181 S.W.2d 49], the Court held that where a testator devised land to a corporate trustee for the purpose of providing educational facilities for needy girls and subsequently, by reason of changed circumstances, it became impracticable to maintain an institution upon the land, the trial court properly authorized a sale of the property and reinvestment of the proceeds, but improperly approved a possible purchase of scholarships in other institutions in absence of a

**198**

concrete plan for reinvestment. In that opinion, the Court cited with approval the Restatement of the Law on Trusts, Section 381, Comment E, which points out that if a testator devises land for the purpose of maintaining a school upon the land, and owing to a change of circumstances it becomes impracticable to maintain the institution upon the land, the Court may direct or permit the trustee to sell the land and devote the proceeds to the erection and maintenance of the institution on other land, even though the testator, in specific words, directed that the land should not be sold and that the institution should not be maintained in any other place. To the same effect is 14 C.J.S., Charities, Section 48.

"In the course of the Pennebaker opinion, the Court made the following statement:

'In Board of Trustees of Madison Academy v. Board of Education of City of Richmond, 282 Ky. 671, 139 S.W.2d 766, the Court authorized the sale of the property and investment of the proceeds, in common with funds of public schools, to carry out the purpose of the trust, where it was no longer possible to continue a separate institution because of change in educational methods, shifting of population, and the ravages of decay. In Harwood et al. v. Dick, 286 Ky. 423, 150 S.W.2d 704, the improvement on the property had burned and a plan to sell the lot and reinvest the proceeds, to be mingled with funds of the County Board of Education and thus contribute to the purposes of the trust, was approved.'

"A reading of the trust deed in the light of the undisputed facts existing at the time of its execution compels the Court to conclude that the principal and primary purpose of the trust created by Mr. Dey was for special concern, aid and assistance to the children of the Irishtown community. Mr. Dey was interested in and was impelled by a charitable motive for the education of children of a particular deprived area. He was not interested in a particular location as a matter of geography, but he was interested that the children of the area be educated according to their special needs according to the best methods then in use. The fact that the school has been changed from one place to another cannot be held to have created a situation whereby, in the words of the rule, his specific restricted purpose is impossible of performance.

"It is rather a situation presenting an instance of where some of his prescribed methods of execution are no longer being used. It is well known that at the present time there are no kindergartens in any public school in the City of Lexington. Certainly, stereopticons are no longer used, and perhaps lectures have changed in their form of presentation and content. But we need not and should not resort as such to the doctrine of cy pres. We simply hold that the specific purpose of Mr. Dey was to financially aid the children of the Irishtown community who were to be educated in a school conducted as a public school but with special attention to their peculiar needs. There is nothing in the present record to show that this is not being done or cannot be done.

"It is, therefore, the opinion of the Court that the primary specific purpose of Mr. Dey is possible of performance by the application of the income from the trust by the Civic League to the needs of the children of the Irishtown community which would otherwise have been served by Lincoln school, referred to by Mr. Dey as the West End Model School, and that the specific modes of executing the trust must yield to the primary purposes of it and that neither the change in location of the building nor the change in specific educational methods is sufficient to warrant the Court in declaring that Mr. Dey no longer wishes to benefit the children of the Irishtown community who are in a public school and who may receive from a trustee funds for

their benefit and welfare during their education."

The judgment is affirmed.

All concur except REED, J., who did not sit.