Chambers *vs* Baptist Education Society.    CHANCERY.

APPEAL FROM THE SCOTT CIRCUIT.    *Case* 70.

*Equity and equitable jurisdiction. Eleemosynary cor-
poration. Quo warranto. Information. Attorney
General. Heirs. Trusts and trustees.*

JUDGE EWING delivered the Opinion of the Court.    *April* 27.

ISSACHAR PAWLING, being desirous to set apart a fund    Allegation of the
for the education of Baptist ministers, and candidates for    bill.
the Baptist ministry, application was made to the Legis-
lature of Kentucky for an act of incorporation, with a
view to its reception and permanent and secure invest-
ment, for the object intended. At the session of 1828–9,
an act was passed, constituting twenty-four persons
therein named, trustees, with corporate powers, by the
name and style of "the Trustees of the Kentucky Baptist
Education Society," and giving to them and their succes-
sors, the authority to exercise all the powers, rights, and
privileges, which are exercised by the trustees of any
academy of learning in the state, and especially "with
the power and authority, in their corporate capacity, to
purchase or receive, by donation, demise or bequest, any
lands, tenements, or hereditaments, monies, rents, goods,
and chattels, and to hold the same, by the name afore-
said, to them and their successors forever, for the use and
benefit of the said institution, and *according to the inten-
tion of the donor or donors,* and *no otherwise.*"

In the following month, Pawling made his will, by which
he devised and bequeathed to the trustees, in ther corpo-
rate capacity, all his estate, (except some small specific
bequests,) amounting to about $20,000, with express in-
structions, and upon the express terms and conditions,
"that the whole of the principal should be a perpetual    Extract from
fund, no part of which was to be used, and the interest    Pawling's will.
to be applied exclusively to the education of such Baptist
preachers, or candidates for the Baptist ministry, as ad-
hered to the articles of general union of Baptists in Ken-

CHAMBERS
vs
BAPTIST EDUCA-
TION SOCIETY.

tucky, no part of it to be applied to either teachers or scholars of any other description whatever," and constituted the trustees his executors, and died some short time thereafter.

The trustees, after holding out similar inducements to the citizens of the adjoining counties, at length proposed, that if the citizens of Georgetown and of the county of Scott, would subscribe to the institution $20,000, payable in five years, with interest from the date, and convey to them the College ground and buildings at said town, that they would locate the College at Georgetown. The amount was subscribed, and terms proposed complied with, and the College was located as promised.

U. B. Chambers was one of the subscribers, in a small amount, and a small sum of the Pawling fund was loaned to him by the trustees. For both of these sums, judgments at law were recovered against him; and he filed his bill in chancery, against the trustees and others, injoining their collection, in which he charges various acts of misfeasance and abuse of their corporate powers, but mainly in the misapplication of the Pawling fund, to other objects and purposes than those designated by Pawling, the founder and donor.

Demurrer to bill
and sustained.

The trustees demurred to the bill, which was joined, and the demurrer sustained by the Circuit Court, and the bill dismissed, from which decree an appeal has been taken to this Court.

Chancery has no
jurisdiction to
declare the for-
feiture of a char-
ter of a corpora-
tion—or inquire
into its misfea-
sances or nonfea-
sances for that
purpose.

As to the charges, which involve a forfeiture of the charter, a Court of Chancery has no jurisdiction over such matters. It cannot inquire into a usurpation or misuser of powers, by the corporation or any of the trustees, nor into acts of misfeasance or nonfeasance, with a view to the amotion of any of its members, or the dissolution of the corporation. These are subjects exclusively of common law jurisdiction, and appertain exclusively to the common law tribunals: 2 *John. Chy. Rep.* 376-78-88; *Attorney General* vs *The Utica Insurance Company*, 5 *Term Rep.* 85; *The King* vs *Whitwell*, 3 *John. Rep.* 134; 5 *John. Chy. Rep.* 380; *Slee* vs *Bloom, &c.* 17 *Vesey*, 491 ; *Attorney General* vs *Earl of Clarendon*, 1 *Equity*

*Cases Ab.* 131 ; *Attorney General* vs *Reynolds,* 1 *Vesey,* 468 ; 2 *Atkins,* 406–7.

But though a Court of Equity cannot take cognizance of acts of forfeiture, nor amove members, nor pronounce a dissolution of the corporation, for a breach of the franchises conferred by the charter, yet where a corporation is made the *depository of trusts,* and property has been invested in its hands as a *trustee,* a Court of Chancery can exercise jurisdiction over such *corporate trusts,* in the same manner, and with like powers, that it may exercise jurisdiction over other trust estates.   And it may be compelled, in good faith, by the order and decree of the Court, to perform its trusts : 1 *Vesey,* 462–68–70, &c.; 2 *John. Chy. Rep. supra ; Kent's Commentaries,* 2, 226, and the authorities referred to; 2 *Maddock's Chy.* 75, and the authorities referred to; *Moon's heirs* vs *Moon's devisees and executors,* 4 *Dana,* 355.

The charter, in the case under consideration, authorises the trustees to receive donations, &c. for the use of the institution, but requires them to apply them *according* to the *intention* of the *donor* or *donors,* and not *otherwise.* But if there were no such requisition in the charter, by the acceptance of a donation there is an acknowledgement and acquiescence in the terms prescribed, and an implied obligation to carry out the terms in' good faith. As Pawling has prescribed and designated the uses, in unequivocal language, to which the fund donated by him shall be applied, those terms should be carried out, and faithfully executed by the trustees.   It is a trust fund, placed in their hands as such, to be vested in good stocks, yielding an interest, or loaned out into good hands, on good security, and the interest applied to the precise objects designated by the donor and founder, and not to any other.

It would seem, therefore, to be their duty, as faithful trustees, invested with the funds of the founder, and the discipline and internal government of the College, to provide a suitable teacher or teachers, as far as the funds will justify, with the requisite qualifications to instruct the beneficiaries, in that manner which will best qualify them to perform the high functions of preachers of the gospel,

CHAMBERS
*vs*
BAPTIST EDUCATION SOCIETY.

Courts of Chancery may enforce the performance of trusts confided to corporations.

Subscriptions received *in aid* of a trust fund, (the purposes & object of which is designated by the founder,) are to be held and used as the trust fund and subjected to the same control and no other.

Trustees, invested with the management of a fund for a specified object, may exercise a sound discretion as to the *means* best calculated to effect that object.

CHAMBERS
vs
BAPTIST EDUCA-
TION SOCIETY.
in that sect or denomination of Baptists, designated by the donor; likewise to use all reasonable exertions to select and call to the institution, beneficiaries of the class and denomination prescribed, and to fit and qualify them for the high functions contemplated by the founder; literary as well as theological instruction should be afforded them, if the funds will admit, and to accomplish the latter object, it would certainly comport more with the fair intention of the donor, and will contribute more surely to the accomplishment of the object contemplated by him, to employ teachers, if attainable, belonging to the same sect of christians, with the class of beneficiaries on whom he conferred his bounty, especially in the theological department. But some discretion is to be allowed to the trustees, in the faithful execution of their trust, as well in the selection of teachers and beneficiaries, (provided the latter be of *that class* designated,) as in the nature and extent of the instruction to be afforded, having an eye to the amount of the fund bestowed. For though Pawling is the perficient founder, and he and his heirs, as such, were entitled to the visitorial power, in the exercise of which, the institution might have been regulated and controlled at discretion, without responsibility or appeal to any other tribunal; yet he, by the terms of donation, has yielded up the power, and the same is invested, by the charter, in the trustees of the College, who, as assignees, and standing in the place of the founder, "may exercise all visitorial power, in their sound discretion, without being liable to any supervision or control, so far as respects the *government* and *discipline* of the institution, exercising their powers in good faith, and within the prescribed limits of their charter: 4 *Wheaton*, 674–5; 1 *Black. Com.* 482; *case of Sutton Hospital*, 10 *Coke*, 33 *a. b.*; *Green* vs *Rutherford*, 1 *Vesey*, 462; *Attorney General* vs *Middleton*, 2 *Vesey*, 327; *Kent's Com.* 2, 242–3.

*Qu*--May not the Attorney General in Ky. proceed by information in Chancery vs corporations eleemosynary in their character?
But admitting the power of a Court of Chancery, in the control and application of the Pawling fund, to the uses designed by the donor, it is contended that the proceeding, in the form of an information, can alone be instituted by or in the name of the Attorney General, who

as a public officer of discretion and trust, will not unne-
cessarily harrass or embarrass the institution, from mo-
tives of malice or ill will.

It is a question of some difficulty to determine, how
far, or in what cases, an information by or in the name
of the Attorney General, may be instituted in Chancery,
in this State, against charitable or eleemosynary corpo-
rations, or whether such a proceeding can be instituted
at all.   There is no statute of the state prescribing or re-
gulating such mode of proceeding.  If it can be insti-
tuted, it must rest for its authority on the common law,
and so much of the statute of 43 *Elizabeth c.* 4, as was
declared by this Court to be in force in this state, in the
case of 4 *Dana, supra,* 354, &c.

In England, the King is the *foundatio incipiens,* or in-
cipient founder of all eleemosynary corporations, such as
Hospitals or Colleges, &c. as he alone can grant a char-
ter of incorporation, while he who is the *first giver* of the
revenues is the *foundatio perficiens* or perficient founder:
1 *Black. Com.* 10 *Rep.* 33; so here, the Commonwealth
is the incipient founder, as the Commonwealth, by her
Legislature, can alone grant a charter or pass an act of
incorporation.   And as the King, as *parens patriae,* had
the general superintendence of all charities which he ex-
ercised by the keeper of his conscience, the Chancellor:
3 *Black. Com.* 427; so here, the Commonwealth being
substituted for the King, as *parens patriae,* should exer-
cise the like superintendence and control.   And as the
powers exercised by the Chancellor there, in the establish-
ment and enforcement of charities, were, for the most part,
*judicial* and not *personal* to the King, and from *whose
decree an appeal lay to the house of Lords*: 3 *Black. Com.*
428; and as all the powers, *purely judicial,* which were
exercised by the Chancellor, in England, may be exer-
cised by the Chancellor here, and as we have a ministerial
officer of the same title, and exercising, in many respects,
the same powers, and performing similar duties with the
Attorney General of England, with the exception that he
was the ministerial officer of the crown, the Attorney
General here, the ministerial officer of the Common-
wealth, we can perceive no good reason why the same

In England it
was the remedy.

CHAMBERS
*vs*
BAPTIST EDUCA-
TION SOCIETY.

proceedings may not be instituted here, that were sustain-
able there, for the enforcement of trusts, or the judicial
contract of such corporations, in their management of
trust funds. Public charities are public blessings, and
the Commonwealth is interested in giving force and effect
to them. They redound to the interest of the Common-
wealth, and good policy requires that the beneficent ob-
jects of the founder should be carried out and enforced.

Purposes of a
*quo warranto.*

A public proceeding may be instituted at law, by *quo
warranto*, or information in the nature thereof, or *scire
facias*, for the ascertainment and enforcement of a for-
feiture of the charter, for default or abuse of power; and
these proceedings against corporations are carried on at
the instance and on behalf of the Commonwealth, and

Judgment there-
on.

she must be a party, "for the judgment is, that the par-
ties be ousted, and the franchises seized into the hands
of the government:" *Kent's Com.* 2, 252; *Rese* vs *Ste-
phenson, Yelv.* 190; *Commonwealth* vs *Union Insurance
Company,* 5 *Mass. Rep.* 230. But a dissolution of the
corporation may not be most desirable, nor redound most
to the interest of the public.

It may be much more consonant to good policy and
the advancement of the interests of the Commonwealth,
to continue the corporation and enforce the application of
the trusts contemplated and provided for by the founder.
If an information cannot be prosecuted in Chancery, we
know of no other public proceeding which can be institu-
ted, on behalf of the Commonwealth, by which that end
and object may be attained. And if the founder be dead,
without heirs or representatives, and no beneficiary, for
the time being, have a vested interest in the use, there
would be no person who could institute any proceedings
against them, to enforce the use, however regardless of
their duty, and faithless to their trust they might be.

Information in
Chancery may be
prosecuted by
Attorney Gen.
in Ky. against
eleemosynary
corporations to
enforce a trust,
—or the founder
or his heirs, (if
he be dead,) or

We think, therefore, that a proceeding, in the form of
an information, may be prosecuted in Chancery, by or in
the name of the Attorney General, against an eleemosy-
nary corporation, to enforce the trust. But while we con-
cede this, we are satisfied that a bill may be filed by the
founder, if living, or his heirs, if he be dead, or by any
beneficiary, having an interest in the use, or by any other,

having a vested interest in the fund, against the corpora-
tion, for a true and faithful execution of the trusts con-
fided to it.

Pawling is the founder, and is a *party* to the *contract*
of donation, and *stipulated* its terms, and has unques-
tionably the right to have those terms enforced, and if
living, might file his bill for that purpose; being dead,
his heirs and representatives, who stand in his place, have
also a right to ask of the Chancellor the same measure
of justice, and would be indulged in the institution of the
like proceedings.

But to entitle a private individual to prosecute a bill,
he must be a party to the contract of donation, or the
representative of such party, or interested in the same,
or in the uses to which the fund was directed to be appli-
ed. And we cannot perceive that the complainant has
any such interest in the Pawling fund, as to entitle him
to maintain a bill, upon charges or allegations, with res-
pect to *its* misapplication. He is not a, party to the do-
nation of the Pawling fund, nor is he the heir of Paw-
ling, nor is he a *cestui que use,* or belong to that class of
charitable objects provided for by Pawling. The charge
that he is a Baptist, belonging to the general union of
Baptists in Kentucky, resident in Georgetown, and own-
ing property there, will not suffice. The interest, thus
derived, is too general, undefined, and remote, to justify
his interference. It equally applies to a large class of
individuals, any one of whom might, with equal proprie-
ty, file his separate bill, and greatly embarrass the trus-
tees in the management of a fund donated by *another*,
and for the specified benefit of a *defined class of objects*,
whose character is not pretended to be filled by the com-
plainant. As an injury in reference to the class of in-
dividuals, of whom the complainant discribes himself as
one, it partakes more of the nature of a public than a
private injury, and to be redressed by a public prosecu-
tion rather than a civil suit.

As to the amount of the Pawling fund, borrowed by
the complainant, as he has no right to inquire into the
misapplication of that fund, he has no more right to with-
hold its repayment than any other individual to whom

CHAMBERS
*vs*
BAPTIST EDUCA-
TION SOCIETY.

any beneficiary,
(having an inter-
est,) or any other
(having a vested
interest in the
fund) may file
their bill to en-
force a faithful
execution of the
trust conferred.

No individual
can proceed a-
gainst an elee-
mosynary corpo-
ration, unless he
be party to the
donation, or a
representative of
one who is, or
interested in the
same, or in the
use to which the
fund is donated,

CHAMBERS
vs
BAPTIST EDUCA-
TION SOCIETY.

any part of that fund had been loaned. To establish a rule that would allow every individual, to whom any portion of that fund had been loaned, to withhold it until the trustees submitted to an inquiry, and could show that they were applying the funds to the purposes designated by the donor, would be establishing a rule that would subject the trustees to endless litigation, that might result in the entire loss of the interest, in the costs of litigation. He, however, has no right to inquire into these matters or object to repayment on such grounds.

Contracts by sub-
scription, in aid
of a charitable
fund, may be a-
voided as other
contracts, for
false suggestions
or suppressions
of truth.

But the complainant has an interest in the Scott fund, as it is called, at least to the extent of the sum subscribed by him. He is a party to the contract of subscription, and if he has been seduced into it, by false representations or a suppression of the truth, in matters material to its correct understanding, or if the consideration has failed, he has a right in this, as well as in all other contracts, to ask its dissolution, and a perpetuation of his injunction against the payment of the money subscribed.

But expressions
of opinions as to
the effect on the
value of proper-
ty at a particular
point where it is
proposed to lo-
cate a college,
(which is the ob-
ject in raising the
fund,) is not such
representation as
will vitiate the
subscription, or
subject those
who express it to
the imputation of
fraud.

The charge in the bill, that highly colored and false representations were made as to the effect which the location of the College at Georgetown would have, in increasing the value of property in the town and its vicinity, which had not been realized, is not a representation about a matter, though false, which in law, can be taken advantage of, or subject the party making it to the legal reputation of fraud. A false estimate or representation of value, either present or prospective, will not vitiate a contract. And as the *location* of the College at Georgetown was the *consideration* which superinduced the subscription, and as that has been performed by the trustees, there can be no pretext for dissolving the contract on the ground of a failure of consideration.

And it is not pretended, that by the *terms* of subscription, that the fund subscribed was to be applied to any *designated class of beneficiaries*, or to *teachers of any defined denomination* of *christians*, or *any designation* made of the uses to which the fund should be applied. The object of all the subscribers, and the main consideration moving all, were the location of the College at Georgetown. It is true that the subscription is made to

the trustees of a College, and it may perhaps be implied, as within the contemplation of the subscriptions, that it was to be a Baptist College, though it is alleged in this bill, that the trustees gave out as an inducement to subscriptions, that the institution should not be sectarian, and there can be no doubt, and the contrary is not charged, that many individuals of other denominations, as well as of non-professors, subscribed. To allow each individual to file his separate bill, and to institute an inquiry into *his* secret motives for subscribing, and to ask the Chancellor to direct the application of *his* subscription to the objects which was within *his secret* contemplation, when he made it, would be to subject the institution to endless litigation and embarrassments, and defeat the manifest and specific object of all, namely, the location and rearing up of a College at Georgetown, for literary purposes. Besides, the fact that all of the professors who have been employed in the institution are not of the Baptist denomination, belonging to the general union, or that a portion of the trustees have seceded from that order, cannot deprive it of the appellation or *character* of a Baptist College.

Upon the whole, we think, as to the Scott fund, in the absence of all *specification* as to the uses or objects to which it is to be applied, that each subscriber must be regarded as having subscibed upon the faith of the charter, and the confidence which they had that the trustees, under the responsibilities of their station, would apply the fund in such manner as to promote the best interests of the institution.

And from their failure to *designate* the *uses*, in the terms of subscription, which, under the charter, they had a right to do, it may be implied that they intended that the trustees should have the entire control and direction of the fund, provided it was used and applied to the purposes of the College, as they have, by the terms of the charter, the entire superintendence, management, control, and internal government of the College, taking care to use the funds given for a *prescribed* object to the objects specified by the terms of the gift.

We do not, therefore, feel it the duty of the Chancellor to raise, by implication, trusts not expressed, and then to exercise his powers in carrying out those implied trusts.

Nor is the allegation, with respect to the insecurity of the fund, sufficiently specific and certain, to demand the interference of the court, if even the complainant had the right to inquire into that matter. All the allegations, in relation to the treasurer's failure to give the security required, may be true, and still the fund be sufficiently safe in his hands. And we are not disposed to indulge in presumptions beyond the specific allegations of the bill, which tend to impute negligence or infidelity to gentlemen, the most of whom have been selected and entrusted by the Legislature with the high and responsible functions committed to the trustees by the charter before us.

It is, therefore, the opinion of the Court, that the decree of the Circuit Court be affirmed with costs and damages upon the damages below.

*Robinson & Johnson* for defendants.