## Grundy, Trustee, et al. v. Neal, et al.

### (Decided April 12, 1912.)

### Appeal from Muhlenberg Circuit Court.

1. Deeds—Voluntary Deed for Charitable Purposes—Reverts to Grantor When Purpose of Conveyance Fails.—Although a deed contains no provision to the effect that, in the event the property shall cease to be used for the purpose for which it was granted it shall revert to the grantor, such provision was not necessary, for the conveyance being a voluntary one for charitable purposes, it would automatically revert to the grantor when the purpose for which the conveyance was made had failed.

2. Deeds—Abandonment of Property.—The trustees to whom the property had been conveyed had torn down and removed the building and disposed of the property, so there was not only a failure of the purposes for which the conveyance was made, but an abandonment of the property by the trustees of the several churches named in the conveyance. The chancellor correctly held that the heirs at law of the donor were entitled to the property.

WALKER WILKINS for appellants.

HOWARD & GRAY, YOST & LAFFOON and PETRIE & STANDARD for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In July, 1883, John S. Young conveyed to William C. Grundy, Dr. Daniel Roberts, R. J. Roll and Daniel Stroud, as trustees for the Baptist, O. S. Presbyterian, Methodist, and Cumberland Presbyterian Churches, a certain tract of land in Central City, Kentucky, for the purpose of having established and maintained thereon a Union Church in which all four of said congregations might worship. At that time Central City was but a small village. The church was built and for many years used by the congregations in accordance with the wish

and understanding of the grantor. But with the growth of the city came a desire on the part of the congregations for separate places of worship, which culminated in the building by each congregation of its own church and the abandonment of the old house. The representatives of these various churches having no further use for this property as a house of worship, removed the building and sold the lot to one R. L. Bennett, and thereupon the heirs-at-law of said John S. Young instituted a suit in the Muhlenberg Circuit Court in which they sought to recover said property, on the ground that the purpose for which it had been deeded to the trustees of the named churches had failed. The trustees denied that the aforesaid conveyance was a gift for a charitable use or purpose, and alleged affirmatively that it was a sale for a valuable consideration. On this issue the case was prepared and tried out, with the result that the chancellor found in favor of the plaintiffs. The defendants, the representatives of the churches, appeal.

The deed in question is as follows:

"This indenture, made and entered into this 21st day of July, 1885, by and between John S. Young of the county of Muhlenberg and State of Kentucky of the first part and I. J. Roll, Dr. Daniel Roberts, Daniel Stroud and William C. Grundy, all of Central City, County and State aforesaid, the second part as trustees, Witnesseth: That for the consideration of one dollar to me in hand paid the receipt of which is hereby acknowledged, and for the further consideration hereinafter mentioned, doth hereby bargain, sell, grant and convey for the purpose hereinafter prescribed to the said party of the second part and their successors forever, the following piece or parcel of land situate and being in the town of Central City, County and State aforesaid, bounded and described as follows (to-wit):

"Beginning at a corner of Marion Grundy, lot on the Greenville and South Carrollton road, thence with the line of said road eighty feet, thence westward and parallel with said Grundy's south boundary line, so as to include one-fourth of an acre of ground.

"Said lot of ground is conveyed for the express purpose of there being a Union Church built thereon to be used by four denominations (to-wit), Baptist, Methodist, O. S. Presbyterian and Cumberland Presbyterian denominations each one Sunday in each month, and shall

be represented by one trustee to be chosen by and from each of the above-named denominations, who shall have the entire and exclusive control of said property for the purpose intended as per subscriptions of Donors, a copy of which is herein embodied and made part of this contract (to-wit): (We, the undersigned, do agree and bind ourselves to pay these sums placed opposite our names to a receiver to be appointed hereafter by the following subscribers for the purpose of erecting a house for the worship of Almighty God somewhere in the limits of Central City, County and State aforesaid, the location to be situated by the building committee to be chosen hereafter by the subscribers, for the sole use and benefit of the various religious denominations the time of each to be specified in the deed the subscription money to be due when the location is selected and the foundation laid.) Provided, nevertheless, that if one of the above-named or any other denomination should be engaged in a service or a protracted meeting to continue more than one week that the denomination claiming the next Sunday shall give its room until the protraction is closed and that the use of said house shall be free at all times for any orthodox preacher of any denomination to hold religious services therein when not previously engaged by appointment. To have and to hold by said parties of the second part and their successors with all and singular appurtenances thereon or in any wise appertaining and will warrant and defend against the lawful claim or claims of any and all persons whomsoever claiming or to claim the same or any part thereof.''

The deed was duly signed and acknowledged by the grantor and recorded in the county court clerk's office for Muhlenberg County. An inspection of the deed shows beyond question that the grantor was not making a sale of this property, but, on the contrary, was giving it to the trustees of these various churches for the sole and exclusive purpose of having erected thereon a Union Church. It appears that certain persons, residents of Central City and that locality, had subscribed a fund sufficient to erect the building and the grantor was by this conveyance providing the lot upon which the building should be erected.

While the deed contains no provision to the effect that, in the event the property shall cease to be used for the purpose for which it was granted it shall revert to

the grantor, such provision was not necessary, for the conveyance being a voluntary one for a charitable purpose, it would automatically revert to the grantor when the purpose for which it was conveyed had failed.

This was expressly decided in McDaniel v. Watson, 4 Bush, 234. In that case an effort was made on the part of the congregation to require McDonald to convey to them as trustees a certain parcel of ground upon which the house of worship, used for some years by the congregation, had been built. The lower court granted the relief. Upon review here this court held that it was apparent that the congregation did not propose to further use the property for a place of worship, but was in fact in the act of abandoning it, and therefore plaintiffs were not entitled to the relief sought, the court holding that:

"The alleged undertaking of McDaniel to convey ground was not upon a valuable consideration, but a voluntary dedication thereof to the use of the congregation; consequently, if the congregation should cease to occupy it, and the uses to which it had been dedicated wholly fail, the estate, if he had conveyed it, would revert to him or his heirs; and, a fortiori, if the use had failed before the conveyance was made, he would be under no obligation to convey the ground."

Again, in Morrow v. Slaughter, 5 Bush, 330, this court announced the same principle in the following language:

"Had the appellee been the donor of a charity, a failure in the object of dedication would, by an implied trust, have resulted in a reversion to herself."

Again, in Taylor v. Rogers, 130 Ky., 112, one John F. Taylor executed and delivered to certain trustees a deed conveying to them a tract of land consisting of about twenty acres, upon the following consideration, "that for and in consideration of the desire of the party of the first part (grantor) to organize and maintain a good school for the education of the white male and female children of Guthrie and vicinity, and any others that may desire to avail themselves of the benefit of said school when organized." The purposes for which the conveyance was made failed. The school could not be conducted. The trustees sought the advice of the chancellor as to what disposition should be made of the property, and upon consideration here this court said:

"As the trust has failed, we conclude that the pres-

ent trustees hold the property in question in trust for the use and benefit of appellants and all other donors. The property may, therefore, be sold in this action by making all the donors, or their heirs, parties, or, if they be numerous, by permitting some to sue or defend for all. The interest of the appellants in the proceeds will be that portion thereof that the value of the land at the time of its donation bears to all the sums contributed, including the value of the land. The interest of the other donors in the proceeds will be in the proportion that the sums contributed by them bear to all the sums contributed, including the value of the land.''

Of course, if the buildings had been removed from the property, the representatives of the grantor in that case would have been entitled to the real estate, for the purposes for which the conveyances were made, having failed, the property would have reverted to them. Here the church building had been removed from the property by the representatives of the several congregations, and there is no question of the improvements involved.

In the case of the Trustees of the General Assembly of Presbyterian Church in United States v. Alexander, et al, 46 S. W., 503, the heirs of one A. H. Wallace sought to recover of the trustees of the Presbyterian Church in the United States a certain tract of land which the said A. H. Wallace had devised to said church as a place of worship in perpetuity to the General Assembly of the Presbyterian Church of the United States. They alleged that the trustees of said church had abandoned the property as a place of worship and had not used it for years, that they were tearing down and destroying the church house and did not intend to longer use it as a place of worship, and would sell the property. The trustees pleaded that the property had been given to them by the testator in his lifetime, that they had been put in possession of it and held it adversely for more than fifteen years. They further pleaded that the membership of the church had diminished to such an extent that they were not able to employ a pastor, and that the testator, when he devised the property to the church, knew of the condition of this congregation, and that he gave it to them absolutely with power to sell and dispose of it and reinvest the proceeds in other church property. Other defenses were interposed, all of which upon demurrer the court held to be insufficient, and plaintiffs were given

judgment. Upon consideration here it was held that the devise was a dedication of the property for a specific purpose. It was not given as an investment for the benefit of the church, which might be changed and the proceeds invested in other property, but the devise was made with the design that a building should be erected upon this property and the gospel preached therein according to the doctrines of the church of testator's preference. The land was devised as a place for worship and the title was conditioned upon its use for that purpose, or, at least, upon its being applied to no other. In conclusion, the court said:

"In our view of the law, whether the trustees can continue to hold the property in question, either under the dedication alleged or under the will, depends upon whether the object of the dedication or the object of the devise has wholly failed, which failure would be effected by its appropriation to another and different purpose. Such failure would not result, we think, from the mere inability to obtain a regular pastor and hold regular services in the building, so long as the church was retained for the purpose of a place of worship. But a contract for the sale of the property, for the purpose of reinvesting the proceeds in other property, admitted in the last paragraph of the answer, was the termination of the use as a place of public worship, and, in our judgment, worked a reversion to the heirs of the testator as of the date of the contract."

The question of law in the case at bar is settled conclusively by the opinion in the cases supra, and especially that in the case last quoted from. There can be no question here but that the purposes for which the property had been conveyed to appellant trustees had failed. They had torn down and removed the building and disposed of the property, so that there was not only a failure of the purposes for which the conveyance was made, but an abandonment of the property by the trustees of the several churches named in the conveyance. Upon this showing the chancellor correctly held that the heirs-at-law of the donor were entitled to the property.

Judgment affirmed.