## Pennebaker et al. v. Pennebaker Home For Girls et al.

June 2, 1942.

F. Douglass Curry, R. W. Keenon and Robert Odear for appellants.

C. E. Rankin and W. Earl Dean for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

The property involved in this action was at one time owned by the Society of Shakers who styled themselves "The United Society of Believers in Christ's Second Appearing." The situs of the property is at

Shakertown in Mercer county, where that branch of the Society was organized about 1805. A rather comprehensive history of the Society and its original acquisition of the land involved herein may be read in the opinion of this court in Adams v. Bohon, 176 Ky. 66, 195 S. W. 156. Because that opinion shows how the land came into the possession of Dr. Wm. F. Pennebaker, one of the members of the Society, we deem it unnecessary in this opinion to iterate those facts. Suffice it to say that in the year 1913, 576 acres of land were conveyed to him in consideration of the covenant on his part that he take charge of the property and support the remaining living members of the Society designated as his "family" for the remainder of their lives. All members of his "family" preceded him in death. In 1915 Dr. Pennebaker executed his will which was probated after his death in the year 1922. The will reads:

"I, W. F. Pennebaker, of Pleasant Hill, Mercer County, Ky., being of sound mind and disposing memory make this my last will revoking all others.

"1. I direct my Executor as soon after my death as possible to dispose of all my personal property not needed in furtherance of the enterprise hereinafter stated, and for the enjoyment of any members of my family by which term I mean all of the former members of the Society of Shakers now living with me, and after the payment of my debts and the cost of administration, he will invest, loan, or expend the remainder as hereinafter directed.

"2. If I should die before the members of my family, I direct my executor to provide for their every want out of the income from my estate I may leave, and at their death to provide each with decent burial in the cemetery at Shakertown, marking the grave of each as has been customary with members of the Society of Shakers.

"3. As soon after my death as practicable I direct my Executor to organize a corporation, for the purpose of establishing and conducting a school for educating and training young girls who are financially unable to educate themselves, and whose parents, if living are unable to assist them in securing a practical education.

"The income from my estate should, if economi-

cally and wisely administered, much more than support those dependent upon me, and I direct the surplus to be used in establishing this school. The buildings on my place are greatly in excess of the needs of the inmates, and I wish the surplus room to be used for this school.

''4. After the death of all those composing my family, I direct my Executor to turn over all of my estate to the corporation organized as above directed, to be used perpetually in support of said school.

''I have not attempted in this will to work out the details of the school contemplated, but leave that to the corporation, but I direct that the school be so conducted that it will be practical, and will train each inmate for that profession, trade or calling she is best suited and that a practical test be devised to determine the calling best suited to each individual.

''I desire that my real estate be held intact as nearly as possible, but should the corporation find it advantageous to sell a part to improve or better the remainder it should be empowered to do so.

''5. My kinsman, Carrie K. Pennebaker, having fitted herself for a teacher, in my estimation, much fitness for this profession, I desire that she be given a position in said school, suitable to her attainments, if she will accept the position.

''6. I am induced to make the above disposition of my property from a sense of duty to those through whom it came.

''The Society of Shakers was organized to do Christian charity and the property was all donated to the Society for that purpose and that intention of the original grantors may in a measure be realized I have attempted to found a charity that will be permanent, and benefit mankind.

''I constitute and appoint E. H. Gaither, my Executor, and direct him to carry out this spirit of this will.''

''Aug. 11, 1915.

''W. F. Pennebaker.

''Signed in our presence by W. F. Pennebaker

and witnessed by us in his presence and in the presence of each other.

"C. D. Thompson

"Jno. Brewer

"State of Kentucky,

"County of Mercer.

At the time of the execution of the will he was possessed of great wealth, but at the time of his death the estate had diminished, and a part of the 576 acres had to be sold to pay the debts of the estate. There remained in the estate approximately 300 acres with several buildings situate thereon and very little, if any, cash to commence the duties of the trust created by the will. Nevertheless a corporation was organized to carry out the purposes of the trust, and directors thereof elected; and a boarding school conducted on the property for approximately 2 years. The operation of the property was not profitable; a barn was destroyed by fire, and the farm lands under tenants were not productive. Consequently the directors were required to borrow money to carry out the purposes of the trust, in the doing of which some of the lands were placed in mortgage. This transaction was approved by the court in Pennebaker Home for Girls v. Board of Directors, 250 Ky. 44, 61 S. W. (2d) 883. The operation of teaching was discontinued, but the home was maintained and arrangements were made for the residents to pursue their studies in the public schools. Even after this change, the income was insufficient to defray the expenses of the institution, whereupon, the directors entered into negotiations with the directors of Goodwill, Incorporated, of Louisville, resulting in an agreement whereby the original directors of the Home resigned and were succeeded by certain members of Goodwill, Incorporated. The new directors continued to operate the home but conducted it in a manner which did not conform to the agreement or the will, as construed by the old board and the appellants herein, who are the collateral kinsmen and heirs of Dr. Pennebaker. Upon the theory that the purposes for which the trust was created had failed, the appellants instituted this suit asking to be adjudged to be entitled to the fee simple title and immediate possession of real estate held by the directors of the Home and for additional accompanying relief.

It is argued by appellants that the operation of a home for the purposes of furnishing food, shelter,

clothes, etc., for needy girls and contributing nothing to their education was such a departure from the purposes for which the property was dedicated as to be a failure of the object of the trust. Upon favorable determination of these charges, we are asked to invoke the rule applied by this court in the case of Grundy v. Neal, 147 Ky. 729, 145 S. W. 401, which held that the property conveyed to certain trustees for the purpose of establishing and maintaining thereon a union church in which the congregations of the Baptist, Methodist, and two Presbyterian churches might worship, reverted to the heirs of the donor upon the abandonment by those congregations of the property as a place of worship. The effect of the decision in that case was to hold that the title to the property was conditioned upon the property being used as a place of union worship; and, since it was a condition which must be complied with to continue the trust estate, a breach of the condition worked a forfeiture in favor of the heirs of the donor. That decision correctly expresses the rule in respect to reverter upon breach of a subsequent condition of ownership of a trust, but has no application to those cases where the trust estate is not dependent for the continuance of its existence upon a mere covenant of the dedication being complied with. In the latter, a breach of duty on the part of the trustees will not be deemed to be an act constituting a forfeiture giving the heirs of the donor the right to claim ownership of the property but will give cause for an action to be instituted by the Attorney General of the Commonwealth, or in some instances, by the beneficiary of the trust against the trustee, either for his removal or to require him to properly administer the purposes of the trust. Carroll County Academy v. Trustees of Gallatin Academy, 104 Ky. 621, 47 S. W. 617. As to whether a direction in the instrument creating the trust shall arise to the dignity of a condition, or whether it merely admits of the construction that it is a covenant, depends upon the intention of the settlor of the trust as indicated by the writing; that is to say, the courts will give that construction to the instrument which, from the words used by the donor in creating the trust it conceives to have been the intention of the donor, and, if by determining from a fair construction of the writing that it was the intention of the donor that in all events the property was to be maintained and used for a charitable purpose and that the manner of carrying out that purpose which

is expressed in the instrument was not the paramount object of the trust, such direction will be construed not to be a condition for the breach of which a reverter will occur. Since the law frowns upon a forfeiture, the courts will be reluctant to construe directions as imposing conditions, unless such construction is manifestly appropriate. Carroll County Academy v. Trustees of Gallatin Academy, supra. These principles are succinctly stated in American Law Institute's Restatement of the Law of Trusts, chapter 11, page 122, Section 401:

> "In the absence of a limitation or condition in the terms of the trust, a charitable trust does not fail merely because of the failure of the trustees to carry out the charitable purposes, whether by failing to use the property for the purposes, or by diverting the trust property to other purposes, as long as it is possible and practicable and legal to carry out the designated charitable purpose. The remedy for a breach of trust is by suit to compel the trustees to perform the trust and to make restitution for the breach of trust, but not to impose a resulting trust for the estate of the settlor. If it becomes impossible or impracticable or illegal to carry out the trust, a resulting trust will arise, if, but only if, the settlor did not manifest a more general intention to devote the property to charitable purposes.

> "In the absence of specific words manifesting an intention to create a condition, the instrument whereby property is conveyed upon a charitable trust will not ordinarily be interpreted as imposing a condition. If property is conveyed in trust for a charitable purpose, the mere fact that there is a direction in the instrument of conveyance that the property shall be used forever for such purpose, or that it shall be used for such purpose only, does not create a condition. Thus, if land is devised in trust to maintain a building thereon forever as the parsonage of a church and for such purpose only, the settlor or his heir is not entitled to recover the land merely because the building is not used for a parsonage or is used for some other purpose. If it is practicable to use the building for a parsonage, the trustees can be compelled to devote it to that purpose. If it is not practicable to use it for a parsonage, the trust will fail and a resulting trust will

arise, if, but only if, the settlor did not manifest a more general intention to devote the property to charitable purposes.''

In Scott on Trusts, vol. 3, page 2124, Section 401.1, we read:

"The mere fact that the trustee of a charitable trust commit a breach of trust does not cause the trust to fail and entitle the settlor or his successors to enforce a resulting trust. This is true not only where the trustees merely neglect to apply the property to the designated charitable purposes, but also where they divert it to other purposes. In such a case, if it is not impossible or practicable to carry out the designated purposes, the remedy is by a suit brought by the Attorney General to compel the trustees to perform the trust, and not by a suit brought by the settlor or his successors to enforce a resulting trust. It is only where the settlor has made the continuance of the trust conditional upon the performance of the trust that the failure to perform results in the termination of the trust and the reverter of the trust property to the settlor or his heirs or next of kin.''

In 10 Am. Jur., page 674, Section 122, the rule is stated in the following language:

"A conveyance of land to the trustees for a charitable use does not create a conditional estate, but only a trust for the charitable use, not liable to be defeated by nonuser or alienation, in the absence of an express condition. In some jurisdictions, there is no reverter if the instrument creating the trust contains no language that can be construed as a condition subsequent or no words providing for a forfeiture or reverter. The courts reaching this conclusion regard a gift to charity, in the absence of provision to the contrary, as made forever, and not reverting to the donor or to his heirs. From this view of the law governing gifts in trust to charitable uses, it is manifest that no neglect, misapplication of funds, or other breach of trust will give a right to the heirs at law to call upon a court of equity to declare a resulting trust for themselves, and, of course, that they have no pecuniary or beneficial interest accruing from the nonexecution of such a trust.''

Continuing the same work says:

"The same rule applies where a general charitable intent can be found. If a general charitable intent is indicated by the terms of the instrument, creating the trust, the courts will generally deny any right of reverter and give effect to the donor's or testator's intention.

"On the other hand and where the estate is created on condition that it shall be used for a certain charitable purpose, the estate granted may be defeated at the option of the grantor or his heirs if the condition is not complied with, and as a general proposition it may be stated that where a person created a trust fund for the benefit of a particular charity or organization and it is impossible to distinguish any general charitable intent, the fund or property will revert to the donor where it becomes impossible to carry out the purposes of the trust, even in the absence of express provisions for reverter."

From what has been said it is obvious that we must look to the wording of Dr. Pennebaker's will to determine whether it was his intention to forever part with title to the property for the benefit of charitable uses or whether he intended to part with it only in the event that it should be used in the particular manner or by the particular persons or corporation designated to carry out his purposes. As we consider the will in the light of the history of the Society of Shakers and the directions for carrying out those principles, it is manifest that the purpose he had above all was that the property should be devoted to a charitable use. The religion he had adopted was founded upon the theory that all property should be held by the possessor for charitable and no other purposes. It was abhorrent to his religious conscience to use property for personal luxury. This characteristic of his nature was expressed in his will in the following language:

"I am induced to make the above disposition of my property from a sense of duty to those through whom it came. The Society of Shakers was organized to do Christian charity and the property was all donated to the Society for that purpose and that intention of the original grantors may in a measure be realized I have attempted to found a charity that will be permanent, and benefit mankind."

The property was originally acquired by the Shakers to be held by them in perpetuity for charitable purposes and that they had the right to accept and hold the property in such manner was decided by this court as early as the year 1834 in Gass v. Wilhite, 32 Ky. 170, 2 Dana 170, 26 Am. Dec. 446. Since the Society had the right to hold and use the property for that purpose, its last living member (Dr. Pennebaker) had the right to hold and use it for that purpose, and, as possessor of that right he had the further right to convey the property for that purpose, which was substantially decided by this court in Adams v. Bohon, supra. It is true that in his will he stated he had decided that his purpose and the purpose of the original donors would be best served by the establishment of a school on the property, but there is no language contained in the will which would indicate that he desired the property to revert to his heirs if the trustees of the estate violated his directions in that respect. It follows that the direction that a school be maintained on the property was a covenant and not a subsequent condition of ownership, which fact calls for the application of the principles enunciated in Carroll County Academy v. Trustees of Gallatin Academy, supra, and not those announced in Grundy v. Neal, supra. The appellants, therefore, are not entitled to maintain the action.

The judgment is accordingly affirmed.