## Pennebaker et al. v. Pennebaker Home for Girls et al.

May 30, 1944.

Keenon & Odear for appellants.

C. E. Rankin for appellee Pennebaker Home for Girls.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming in part and reversing in part.

The decision involves the authority of the trustee of a charitable trust to make final disposition of the real estate devised to it under the will of Dr. William F. Pennebaker, who immediately before his death in the year 1922 was the sole survivor of the famous colony commonly known as the Society of Shakers, located at Pleasant Hill, sometimes called Shakertown, Kentucky. The Society was formed in the year 1805 by the execution and recordation of an instrument known as the covenant. Persons could become members of the Society by assenting to the terms of the covenant, which was construed in Gass et al. v. Wilhite et al., 32 Ky. 170, 2 Dana 170, 26 Am. Dec. 446, in the year 1834, as creating a perpetual trust for the benefit of charity. Therein it was held that no member could succeed to any right in the property of the Society, except as beneficiary of the uses and purposes described in the covenant. In the year 1917, the Board of Education of Mercer County sought to obtain title to the property by escheat, but it was held in Adams v. Bohon, 176 Ky. 66, 195 S. W. 156, that the property was not subject to such disposition. The opinion in that case relates the interesting history of the Society. In Easum v. Bohon, 180 Ky. 451, 202 S. W. 901, L. R. A. 1918D, 1144, decided in the year 1918, the descendants of a deceased member sought title to the property, but the Court held that no part of the property could ever pass to a member or his descendants. In the year 1921, the parent Society of Shakers in the State of New York sought title to the property under the contention that it reverted to it when all the members died. That claim was denied in Board of Parent Ministry v. Bohon, 192 Ky. 285, 233 S. W. 721. Upon his death in the year 1922, Dr. Pennebaker devised the property to a

corporation thereafter to be created, and directed that the corporation take title to the property and use it for the purpose of providing educational facilities for girls financially unable to educate themselves, and whose parents, if living, are unable to assist them in securing a practical education. The corporation, styled "Pennebaker Home for Girls," was formed, and operated a school for girls for several years. Financial difficulties were encountered, and it was deemed more practicable and economical to furnish the beneficiaries with a home on the property and permit them to attend the public schools of Mercer County located nearby. The corporation became involved in debt, and permission to mortgage some of the property to raise funds necessary to retire the indebtedness was asked and granted by this Court in Pennebaker Home for Girls v. Board of Directors, Pennebaker Home for Girls, 250 Ky. 44, 61 S. W. 2d 883. The trustee continued to administer the trust, deriving income from share-crop farming until the year 1939, when it agreed with the Good Will Industries of Louisville, Kentucky to an arrangement whereby the latter took over the administration of the trust; but that arrangement did not bring about the desired or anticipated results. Conceiving that the trust had failed, because of the alleged mismanagement of the property by Good Will Industries, appellant, I. H. Pennebaker, and other collateral kinsmen of Dr. Pennebaker, brought suit for the purpose of having themselves declared owners of the property by reverter. In that case we held that the devise under the will of Dr. Pennebaker was one in perpetuity for charitable purposes. The effect of the decision is that no descendant of any former member of the Society can ever succeed to the title to the property, by reason of such relationship. I. H. Pennebaker et al. v. Pennebaker Home for Girls et al., 291 Ky. 12, 163 S. W. 2d 53, 143 A. L. R. 389. In that opinion Dr. Pennebaker's will is set out at length. Our decision in that case declared that the direction that a school be created and operated on the property was a mere covenant expressing the desire of the settlor of the trust, and was not a condition subsequent upon the failure of which the property would revert to the descendants of the settlor.

Since that decision, the marketable value of the property has increased, along with the general enhancement in value of farms; but the income from the property is not sufficient to continue to maintain a home for

the beneficiaries of the trust, and in addition, to make repairs necessary to maintain the buildings on the property; consequently, the improvements on the farm have steadily deteriorated for lack of repairs, and it will not be long before the improvements will waste away and all income will cease. In full realization of these facts, the trustee in this suit has petitioned the Court to permit it to sell the property and invest the proceeds in such manner as will permit it to carry out the purposes of the trust. It is suggested that the proceeds might be invested in other securities, or might be used for the purpose of purchasing perpetual scholarships in other educational institutions, whereby the beneficiaries of the trust could receive the education it was originally designed should be afforded them on the property devised to the corporation. The collateral kinsmen of Dr. Pennebaker, who instituted the action in I. H. Pennebaker et al. v. Pennebaker Home for Girls et al., supra, were made parties defendant, as was also the Attorney General of the Commonwealth. The collateral kinsmen reasserted the claims made by them in the former suit. A demurrer to their pleading was sustained by the Court, and we think properly so, under the doctrine of res adjudicata. The Attorney General filed answer disclaiming any interest in the subject matter. The Court approved the plan to sell the property, and authorized (1) the trustee to invest the proceeds in securities, and the income to be used to carry out the purposes of the trust, or (2) scholarships in other educational institutions to be purchased for the benefit of those entitled thereto under the will of Dr. Pennebaker.

In American Law Institute's Restatement of the Law on Trusts, Section 381, Comment E, it is said:

"If a testator devises land for the purpose of maintaining a school or other charitable institution upon the land, and owing to a change of circumstances it becomes impracticable to maintain the institution upon the land, the court may direct or permit the trustee to sell the land and devote the proceeds to the erection and maintenance of the institution on other land, even though the testator in specific words directed that the land should not be sold and that the institution should not be maintained in any other place."

To the same effect is 14 C. J. S., Charities, sec. 48, pp. 504-506 inclusive, and 10 Am. Juris., Sec. 51, pp.

620, 621. In Hill v. McGarvey, 19 S. W. 586, 14 Ky. Law Rep. 101, a similar plan to the one herein proposed was approved. In Hegan v. Netherland et al., 141 Ky. 686, 133 S. W. 546, the Court held that a court of equity has inherent power to direct a sale of trust property where the trust fund, by reason of such sale, can be more beneficially administered in accordance with the intention of the settlor. A similar holding was had in Sawyer v. Lamar et al., 230 Ky. 168, 18 S. W. 2d 971. In Board of Trustees of Madison Academy v. Board of Education of City of Richmond, 282 Ky. 671, 139 S. W. 2d 766, the Court authorized the sale of the property and investment of the proceeds, in common with funds of public schools, to carry out the purpose of the trust, where it was no longer possible to continue a separate institution because of change in educational methods, shifting of population, and the ravages of decay. In Harwood et al. v. Dick, 286 Ky. 423, 150 S. W. 2d 704, the improvement on the property had burned, and a plan to sell the lot and reinvest the proceeds, to be mingled with funds of the County Board of Education and thus contribute to the purposes of the trust, was approved. We have found no decision to the contrary. The Court, therefore, properly granted the main relief sought, i. e., the sale of the property and reinvestment of its proceeds. But we are of the opinion that the judgment went too far in approving the possible purchase of scholarships in other institutons. Until a concrete plan is submitted for reinvestment of the proceeds and the use of the income or corpus, there is insufficient showing to justify the approval of any particular form of investment or any particular use to be made of the income from the property. We are at present inclined to the opinion that the corpus of the estate should remain in the control of the trustee, under the supervision of the Court, and the income only expended in furtherance of the purpose of the trust; however, this part of the decision will not be construed to be the law of the case, should a more suitable plan be submitted. On return of the case, the judgment will be modified so as to leave open for further adjudication the question of the type of securities in which the proceeds of sale shall be reinvested, and the manner in which the income from (or the corpus of) the estate shall be used, to effectuate the purposes of the trust. This question may be presented in the form of a concrete plan, or alternate plans. to be submitted to the Court for approval.

Insofar as it authorizes the trustee to make sale of the property involved, the judgment is affirmed; but, insofar as it purports to authorize the trustee to reinvest the proceeds of the sale in scholarships, or any other particular form of investment, the judgment is reversed, for further proceedings consistent with this opinion.

Affirmed in part; reversed in part.