## Commonwealth ex rel. Marshall v. Beeman et al.

Nov. 17, 1944.

C. E. Rankin and L. F. Speckman for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is another chapter in the litigation involving property of the Society of Shakers in Mercer County, recently outlined in several cases to be cited, especially in Pennebaker v. Pennebaker Home for Girls, 297 Ky. 670, 181 S. W. 2d 49. We state briefly only such part as is pertinent to an understanding of the present case.

Dr. Pennebaker, the sole survivor of the Society, devised the property, in trust, for a school for needy girls, but the income was not sufficient to repair and improve the property. The corporate trustee was held to have power to mortgage the property to secure $8,000, borrowed for those purposes, limited, however, to such part as might have been or be necessary to execute the intention of the donor Pennebaker Home for Girls v. Board of Directors, Pennebaker Home for Girls, 250 Ky. 44, 61 S. W. 2d 883. It developed that the income from the trust estate was not sufficient to maintain the school as an independent institution of education, so teaching was discontinued and arrangements were made for the beneficiaries to attend the public schools. The original directors resigned and were replaced by certain members of Goodwill Industries, Incorporated, a charitable organization of Louisville; but they did not conduct the Home in a manner deemed by Dr. Pennebaker's collateral heirs to be in accord with the donor's expressed intentions. The heirs brought suit to have themselves adjudged the fee simple title of the property upon the grounds of forfeiture and reverter because of the failure of the trust and departure from its purposes by the management. The claim of the heirs was denied as the use was charitable and within the intent of the donor. Pennebaker v. Pennebaker Home for Girls, 291 Ky. 12, 163 S. W. 2d 53, 143 A. L. R. 389. The trustee petitioned the court to permit it to sell the property and invest the proceeds in such a way as would enable it to carry out the purpose of the trust. We held it proper for the chancellor to have authorized a sale of the property, but that the court should have left open the character of the investment of the use and the proceeds. Pennebaker v. Pennebaker Home for Girls, 297 Ky. 670, 181 S. W. 2d 49. The heirs were again denied any right to the property.

After the opinion was delivered in the second case,

reported in 291 Ky. 12, 163 S. W. 2d 53, 143 A. L. R. 389, which was on June 2, 1942, the present suit was instituted in the name of the Commonwealth, by Hubert Meredith, Attorney General, on relation of Burwell K. Marshall, against the members of the Board of Trustees of the Pennebaker Home for Girls, the corporation itself, Chauncey E. Beeman, superintendent or manager of the Home, and certain creditors. The individual trustees were charged with negligence and mismanagement in several particulars and the superintendent with extravagance, misappropriation, incompetent and wrongful management, personal misconduct and other derelictions. The petitioner sought to have all of these parties removed and the court name new trustees. Upon appropriate allegations it was also sought to have the court declare the Home not to be the owner of the property, and direct that another corporation be formed to which the property should be conveyed. The plaintiff also attacked the validity of the mortgage upon the property to the Mercer County Bank and the judgment enforcing that mortgage, as described in the third case above cited. In this connection it was prayed that the members of the Board of Trustees be held personally liable for that debt. The court sustained a demurrer to some parts of the petition, as amended, and heard evidence on other issues of fact. While the court found basis for some criticism of the management, he was of opinion that it was not of the character that authorized or justified the court to interfere. The judgment dismissed the petition and the plaintiff appeals.

The appellant here confines his objections to the judgment to three general classes, namely: (1) The mortgage and the judgment of foreclosure are void; (2) the trustees are personally liable for the debt; and (3) they should be removed.

First point. This reaches back of the first case, decided in 1933 and reported in 250 Ky. 44, 61 S. W. 2d 883, in which we held the corporate trustee had power to mortgage so much, but only so much, of the estate as was necessary to secure an indebtedness incurred in repairing and improving the property and money to be borrowed for further expenditures on that account, amounting to $8,000. It is insisted that some $4,500 of that amount was a deficit in operation, created by a failure to conduct the institution within its income. It seems to us that the question of the character of the debt is a

matter res adjudicata and cannot be opened up by a collateral attack on that judgment, sanctioning the mortgage and expenditure. It is true the suit for a declaration of rights in respect to that matter was novel in form, the members of the Board of Trustees of the Home suing the corporation which they managed; but the issue was made by respective counsel and fully considered. We do not think that was such a case as required that the Attorney General be made a party. His duties in connection with charitable trusts do not seem to go so far. 5 Am. Jur., Attorney General, Sec 17; 10 Am. Jur., Charities, Sec. 115.5; 14 C. J. S., Charities, sec 62; Dickey v. Volker, 321 Mo. 235, 11 S. W. 2d 278, 62 A. L. R., 858; Jenkins v. Berry, 119 Ky. 350, 83 S. W. 594; Jenkins v. Berry, 122 Ky. 311, 92 S. W. 10; Chambers v. Baptist Educational Society, 40 Ky. 215, 1 B. Mon. 215.

As to the foreclosure sale. The point now raised in this connection was involved in the last case, Pennebaker v. Pennebaker Home for Girls, reported in 297 Ky. 670, 181 S. W. 2d 49, by the cross petition of the bank. Since the Home was interested in the construction of the will with respect to the disposition of the entire property and the reinvestment of the proceeds to accomplish the intent of the donor where the specific plan was not feasible, at the instance of the president and attorney of the Home the court appointed a disinterested attorney to represent it and he opposed the proposed disposition. Moreover, since the matter of title to the property was involved and questions seriously affecting the character of the public charity, or the mode of executing the trust, were raised, the parties thought the Attorney General should be brought into the case as the representative of the public, or of the "indefinite and fluctuating body of persons who are the cestuis que trust" (5 Am. Jur., Attorney General, Sec 17), so he was made a party defendant. The Attorney General disclaimed any interest then and let the matter proceed without objection. Some of the questions involved in this independent suit were present, or, at least, lurking, in that case and the Attorney General is, of course, bound by the judgment. It was disclosed in that case that the Home had in fact mortgaged all of its real property, although this court had held it could mortgage only so much as was necessary to raise the money. For aught that appears, it may have been necessary to do that. But that fact became im-

material, or at least harmless, for the judgment of foreclosure directed that only so much of the property should be sold as was necessary to satisfy the debt, and only 147 acres were sold out of a total of nearly 400 acres.

Second point. The claim of personal liability of the directors is based upon the propositions: (a) The former members of the board had become so liable because of malfeasance in incurring the debt, which is the same hypothesis upon which the mortgage is claimed to be void, and the new members agreed to and did assume that liability in consideration of their being chosen as such; and (b) the agreement is contained in the minutes of the board.

As we have said, the mortgage was given under the sanction of a judgment to the extent it was necessary and that matter is closed.

The minutes of the meeting of the Board of Directors, held August 3, 1939, called for the purpose of transferring the management and control of the institution to the Louisville group who were conducting the charity known as Goodwill Industries, show that the terms of the transfer were that they, among other things, would pay $1500 on the indebtedness and issue a note for the balance. One by one the old members resigned and in like manner the vacancy was filled by the election of a new member. We do not regard the record as evidencing any personal commitment of the new members to pay the debt. This was simply one of the undertakings and specific actions that they, as a body, proposed or agreed to do in the management of the institution, whose income from the trust was proving so insufficient. It appears that $1500 was furnished by an interested person living in Louisville and paid to the bank. It assigned to him a proportionate interest in the mortgage, and that was included in the foreclosure judgment. It would seem that the board had expected this sum to be given absolutely and were disappointed.

Third point. Several members of the board sought to be removed had resigned when the suit was tried. As we have said upon conflicting evidence the court found a basis for some criticism, but the conduct of the board was not wrongful, nor was it of the degree or character that would jeopardize the trust, or of such a nature as authorized interference by the court. We concur in the finding of fact, and as well in the conclusion of law, that

the supervisory power of a court of equity over a public charity, while broad, does not authorize judicial interference with the discretion of the trustees in managing the estate according to the donor's intention if it is fairly and honestly exercised. As stated in Berry, Trustee, v. Williamson, 50 Ky. 245, 11 B. Mon. 245, with reference to removal of a trustee of a private trust:

"Upon the question of removal, the important inquiries are, is the trustee competent to the duties of the trust? Has he thus far discharged them faithfully and with reasonable discretion and diligence, and is there any reasonable ground to apprehend a failure thus to perform them in future? Has he willfully and injuriously, to the beneficiaries, assumed any right or neglected any duty or otherwise abused his authority as trustee? Is there anything in his personal character or conduct or situation, which renders him unfit to hold the office or will prevent a beneficial exercise of his duties by him? If all these questions are answered in favor of the trustee, there would seem to be no room left for any just cause of removal. And if some of them were even answered unfavorably to him, the inquiry would still remain as to the nature and importance of the defect, and whether removal would be the appropriate consequence. In a certain state of case, security from the trustee might be all that should be required. In another state of case, a distinct annunciation of his rights and duties might suffice. The removal of a trustee who has important interests committed to his charge, and especially when this is for the benefit of persons who are not before the Court and can not speak for themselves, is a matter addressing itself to the sound discretion of the chancellor, and on which he should exercise his own judgment, and in view of all the circumstances and of all interests involved, should act upon his own responsibility."

See also Attorney General v. Wallace's Devisees, 46 Ky. 611, 7 B. Mon. 611; Chambers v. Baptist Educational Society, supra; Jenkins v. Berry, supra; 14 C. J. S., Charities, sec 49.

The judgment is affirmed.